O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FELICIA BURCH, | ) | CASE NO. CV 09-01959 RZ |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Felicia Burch seeks review of the Social Security Commissioner's decision denying her application for Supplemental Security Income. Plaintiff was a minor when she filed her application, but she turned eighteen while the administrative process still was on-going. The Administrative Law Judge found that Plaintiff did not qualify for benefits either as a child or as an adult, and denied her application. Plaintiff now seeks this Court's intervention.

Plaintiff had been declared disabled as a much younger child, as a result of a tumor on one of her kidneys. The kidney was removed, and the disability payments associated with that condition ended. Plaintiff's current action concerns a different impairment, her borderline intellectual functioning. The Administrative Law Judge found Plaintiff's condition did not qualify her for disability at either stage of her life. The Court disagrees.

Like disability payments under Title II of the Social Security Act, Supplemental Security Income, established under Title XVI of the Act, is for persons who are disabled, the key distinction being that the payments are provided as a means of welfare, not insurance. An adult is disabled, essentially, if he or she cannot work. A child, who is not expected to be in the workforce, is disabled if he or she cannot function appropriately in certain areas that the Social Security Administration calls domains. In that situation, the child is said to functionally equal a listing in the Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix I. A person who meets one of those listings is said to be disabled without further evaluation. *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1996).

The Administrative Law Judge found that Plaintiff did not have marked limitations in any of the domains. Substantial evidence did not support this finding in the domain of Acquiring and Using Information and in the domain of Attempting and Completing Tasks.

In finding that Plaintiff had less than a marked limitation in the domain of Acquiring and Using Information, the Administrative Law Judge wrote:

> Testing has revealed that "there is a severe discrepancy between [the claimant's abilities and achievement" (Exhibit 12/3). The Teacher's Questionnaires show that the claimant does not work at grade level. However, in February 1999, her teacher reported that the claimant's reading skills were improving (Exhibit 14/6). Another teacher reported that the claimant is cooperative and works hard in school (Exhibit 13/8). In February 1999, her 6th grade teacher reported that the claimant often finished things she started; listened and remained attentive; was able to organize her work; was able to concentrate on her school work; could stick to a play activity; thought before acting; and rarely acted

        impulsively (Exhibit 14/1). The teacher also reported that the claimant was often able to learn new skills and keep up with peers. Therefore, the Administrative Law Judge finds that the claimant has a less than marked limitation in acquiring and using information. In May 2000, a teacher reported that the claimant was "a quiet hard-working student who has made a lot of academic progress this year. She also seems more confident and a little more willing to assert herself" (Exhibit 38/1).

[AR 239-40] Under the regulations, a child is disabled if he or she has extreme limitation in at least one of the six domains of functioning, or marked limitations in at least two of the six domains. A "marked" limitation in a domain is one which "interferes seriously with your ability to independently initiate, sustain, or complete activities," and is also (somewhat unhelpfully) defined as "'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2). An "extreme limitation," is more than a "marked" limitation; that is, it is one which "interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). The regulations expand upon these definitions with various examples and comparisons.

        The evidence cited by the Administrative Law Judge does not show age-appropriate functioning. At best, it shows improvement in some areas from prior years, and then only in isolated general comments from 1999 and 2000. But it ignores significant other evidence to the contrary. For example, Plaintiff's Triennial Review conducted under the Individuals with Disabilities Education Act in 2003, showed that Plaintiff had a marked limitation in the domain of acquiring and using information. [AR 448 *et seq*.] Based on testing, Plaintiff was assessed as being in the Very Low range for reading, math reasoning, math calculations and listening comprehension. [AR 448-49] She had deficits in the areas of expression and auditory processing, and her assignments often were incomplete. [AR 449] All of these show significant limitations in the areas of acquiring and using

information. The triennial report also notes that this had been true three years earlier as well, with processing deficits in auditory processing and expression. [AR 448; *see also* AR 106-07] Finally, of note here, the report concluded that her learning disability was not primarily the result of limited school experience or poor attendance. [AR 450]

In the face of this kind of evidence, it would be arbitrary to conclude, on the basis of the isolated comments cited by the Administrative Law Judge, that Plaintiff had less than a marked limitation in the domain of acquiring and using information.

For the second domain, the Administrative Law Judge found as follows:

> <u>Attending and completing tasks</u>: The claimant had a pattern of incomplete school work (Exhibit 14/5). The teacher noted that this incomplete work may have been related to a lack of help at home (Exhibit 14/6). However, her 6th grade teacher reported in February 1999, that the claimant was often able to finish tasks she started, remained attentive, was able to concentrate on school work and stick to a play activity (Exhibit 14/1). Therefore, she had a less than marked limitation in the domain of attending and completing tasks.

[AR 240] This is quite a thin basis upon which to state so definitively that Plaintiff had a less than marked limitation in this domain. Essentially, the Administrative Law Judge relied on a single piece of evidence, a teacher's circling of "often" on a questionnaire, after having known the student for six months. [AR 121] There is no greater analysis or description given, or even any attempt to reconcile inconsistencies, such as circling "often" as to "Is the child able to finish things he/she starts?" [AR 121] and, in the very same questionnaire, stating "Felicia has a pattern of incomplete work which we are trying to improve upon currently," which sounds like she also "often" is *unable* to complete work. Beyond this, however, is the fact that the record contains other evidence of Plaintiff's

marked limitation in this domain, not surveyed or mentioned by the Administrative Law Judge. At the 2003 triennial evaluation, the then current teacher observed that Plaintiff's assignments often were incomplete, that Plaintiff needed many reminders, that she made many excuses, and that she gives up easily and acts helpless. [AR 449] The presence of significant evidence of Plaintiff's marked limitation in this domain, contrasted with the very thin and cursory statement by the Administrative Law Judge, demonstrates that, in this domain as well, Plaintiff had a marked limitation on her ability to function.

The Administrative Law Judge thus erred in his assessment of Plaintiff's childhood disability claim. Accordingly, that portion of the decision must be reversed.

Likewise, the decision must be reversed with respect to the assessment of Plaintiff's adult disability claim. At Step five of the sequential evaluation, the Administrative Law Judge rejected the testimony from the vocational expert at the most recent hearing, on the grounds that the vocational expert had accepted certain IQ scores from Exhibit 44. [AR 235] As the Commissioner acknowledges in this Court, however, the vocational expert did not accept those scores, and thus the articulated basis for disregarding the expert's testimony was erroneous. The Commissioner then seeks to justify the rejection on grounds that the Administrative Law Judge did not himself use, but this violates the ruling of *Ceguerra v. Secretary of Health & Human Services*, 933 F.2d 735, 738 (9th Cir. 1991), which holds that the Court can review only the matter decided by the Administrative Law Judge, not *post-hoc* rationalizations. Thus, the record did contain substantial evidence that Plaintiff could not work.

The Administrative Law Judge, however, stated that he relied on the vocational expert's testimony from the prior hearing. [AR 235] While that expert testified that there were jobs in the national economy which the Plaintiff could perform [AR 1241], the testimony was predicated on the hypothetical assumptions, one of which was that a claimant had a tenth-grade education. [AR 1240] The testimony is only valid if the assumptions also are valid, however, *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001), and the tenth-grade education assumption was not borne out by the record. Plaintiff attained

1  the age of a tenth-grader, but never the accomplishments of one, performing at the third to
2  fifth grade levels as a sixteen-year old, in a special day class, not in the regular class-room.
3  [AR 443-45]

4        The Commissioner bears the burden at Step five of the sequential evaluation.
5  The testimony of the prior vocational expert having no evidentiary value, *Lewis, supra*,
6  the Commissioner has failed to carry that burden. Hence, the decision must be reversed
7  as to the adult disability as well.

8        There is no point in sending this matter back for further consideration. The
9  record already is more than 1200 pages long, and the proceeding has gone on for about half
10 of Plaintiff's life. Certainly nothing new will be developed as to Plaintiff's childhood,
11 which ended more than five years ago, and the Commissioner simply did not carry his
12 burden as to Plaintiff's adult disability. Accordingly, the matter is remanded to the
13 Commissioner solely for the payment of benefits. *Schneider v. Commissioner of the Social*
14 *Security Administration*, 223 F. 3d 968, 975 (9th Cir. 2000).

15       IT IS SO ORDERED.

17       DATED: June 3, 2010

                                        RALPH ZAREFSKY
                            UNITED STATES MAGISTRATE JUDGE